UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SIGNAL HOUND, INC.,

                         Plaintiff,

         v.

EXPANDABLE SOFTWARE, INC.,

                         Defendant.

CASE NO. C21-5448 BHS

ORDER

This matter comes before the Court on Defendant Expandable Software, Inc.'s

Motion to Dismiss, Dkt. 17. The Court has considered the briefing filed in support of and

in opposition to the motion and the remainder of the file and grants in part and denies in

part the motion for the reasons stated below.

## I.   BACKGROUND

Plaintiff Signal Hound, Inc. is a global corporation in Battle Ground, Washington

that designs and builds spectrum analyzers and signal generators for engineers and radio

frequency professionals. Dkt. 14, ¶ 5. In 2019, Signal Hound was looking to upgrade its

Enterprise Resource Planning ("ERP") software, which it uses to do things such as

calculate pricing discounts. *Id.* ¶¶ 6–7. Signal Hound sent a Request for Information

("RFI"), Dkt. 14-1, to software companies to determine their respective capabilities and to create a short list of vendors who would be asked to provide full proposals. Dkt. 14, ¶ 7. Expandable responded to the RFI and was ultimately selected to provide a full proposal. *Id.* ¶¶ 8–13; *see also* Dkt. 14-1.

Signal Hound's RFI informed vendors that it sought an integrated system that could accomplish the same tasks of the multiple software programs it was then using. Dkt. 14-1 at 4. It wanted to increase efficiency and accuracy by limiting manual manipulation and data entry. *Id.* The first part of the RFI prompted respondents to indicate whether they could support certain programs. *Id.* at 6. Respondents could also write comments about the requirements and were prompted to respond to other open-ended questions in the second part of the RFI. *See id.* at 7–18.

Expandable responded that most of Signal Hound's requirements were supported "out of the box." *See id.* at 7–13. Among the things Expandable said were supported out of the box was the requirement labeled "Price Lists Defined with Multiple Criteria; Matrix Based Pricing for Volume Buying; Contract Specific Pricing Capabilities; Promotional Codes for Marketing Purposes." *Id.* at 11. Expandable also stated that "[s]oftware customization is rarely needed because Expandable ERP software is extensively configurable" and that "workflow can be tailored to match the unique business processes of [the] organization." *Id.* at 14. It also represented that its customers receive "a full-blown, proven ERP system that is easy to use, well-supported and will meet their needs far into the future." *Id.* at 15.

The companies met at Signal Hound's office in Battle Ground to discuss Signal Hound's requirements and Expandable's capabilities. Dkt. 14, ¶¶ 13–14. During those meetings, Expandable indicated that it "could not currently handle Signal Hound's current pricing model, because it was based on the quantity of items purchased rather than the dollar volume of the purchase." *Id.* ¶ 14. Signal Hound's CEO responded that he would work on developing a dollar-volume pricing model, which Expandable assured him they could work with. *Id.* Expandable's executives assured Signal Hound that if Expandable "could not make its software work to Signal Hound's satisfaction," it would fully refund the purchase price as it had done for another customer. *Id.* ¶ 16.

Expandable then sent Signal Hound a quote totaling $158,709 which included the "Expandable ERP Software Base Module" for $95,500, third-party products for $7,590, the "Expandable Implementation, Training & Professional Services" for $50,170 based on an estimated 286 hours of professional services, annual maintenance for $20,499, and a $15,050 discount. *Id.* ¶ 18; *see also* Dkt. 14-2 at 2–3. Signal Hound accepted that offer and signed the Software Licensing Agreement ("SLA") and the Software Maintenance Agreement ("SMA") on November 26, 2019. *See* Dkt. 14-2 at 4–10. The SLA contained a warranty waiver stating "[t]his warranty is in lieu of all other warranties expressed or implied, including, but not limited to, the implied warranties of merchantability and fitness for a particular purpose." Dkt. 14-2 at 4. Both the SLA and SMA included choice of law provisions stating: "This agreement will be governed by the laws of the State of California" and a provision stating: "This agreement . . . is the complete and exclusive statement of the agreement between the parties, and supersedes all proposals or prior

1    agreements, oral or written, and all other communications between the parties relating to

2    the subject matter of the agreement." *Id.* at 5, 9. (emphasis omitted). Signal Hound paid

3    all amounts due under the contracts. Dkt. 14, ¶ 21.

4        Expandable and Signal Hound tried for months to implement the software. *Id.*

5    ¶ 22. Ultimately, Expandable was unable to provide automated pricing based on Signal

6    Hound's new pricing model. *Id.* Expandable offered to customize the software to handle

7    the pricing model, apprising Signal Hound that the customization would cost over

8    $200,000 and take more than a year to implement. *Id.* ¶ 23. Signal Hound rejected that

9    offer and Expandable's alternative solution to continue to run the software Signal Hound

10   had previously used, Microsoft Access, alongside Expandable's software. *Id.* ¶¶ 23–24.

11   Signal Hound requested a refund which Expandable rejected. *Id.* ¶ 24. Signal Hound

12   never finished implementing Expandable's software. *Id.*

13       Signal Hound sued Expandable for intentional misrepresentation, negligent

14   misrepresentation, breach of implied warranty of fitness for particular purpose, breach of

15   implied covenant of good faith and fair dealing, and failure of consideration. Dkt. 14.

16   Expandable moves to dismiss for failure to state a claim, arguing that Signal Hound did

17   not plead its misrepresentation claims with the particularity required for fraud claims,

18   Signal Hound is attempting to add new contract terms, and the contract waived implied

19   warranties. Dkt. 17. Signal Hound argues that it effectively pled its misrepresentation

20   claims with particularity, the warranty waiver in the contract was not conspicuous, and

21   Expandable's failure to provide usable software prevented the purpose of the contract

22   from being realized and made the contract fail in a material respect. Dkt. 20.

1

## II.   DISCUSSION

2

**A.   Legal Standard**

3

Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either

4

the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

5

cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

6

1988). A plaintiff's complaint must allege facts to state a claim for relief that is plausible

7

on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial

8

plausibility" when the party seeking relief "pleads factual content that allows the court to

9

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

10

Although the Court must accept as true the complaint's well-pled facts, conclusory

11

allegations of law and unwarranted inferences will not defeat an otherwise proper Rule

12

12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir.

13

2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A]

14

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more

15

than labels and conclusions, and a formulaic recitation of the elements of a cause of

16

action will not do. Factual allegations must be enough to raise a right to relief above the

17

speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and

18

footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-

19

defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*,

20

550 U.S. at 555.).

21

22

1

**B.      Misrepresentation Claims**

2      The Software License Agreement provides that it "will be governed by the laws of

3   the State of California." Dkt. 14-2 at 9. Courts generally enforce choice of law

4   provisions. *See McKee v. AT&T Corp.*, 164 Wn.2d 372, 384 (2008). Neither party

5   disputes the applicability of the choice of law provision or of California law, but the

6   choice of law provision, on its face, applies only to the contract. Therefore, the provision

7   applies to Signal Hound's contractual claims (breach of implied covenant of good faith

8   and fair dealing, breach of implied warranty of fitness for a particular purpose, and failure

9   of consideration). But it does not seem to apply to Signal Hound's tort claims (intentional

10  misrepresentation and negligent misrepresentation).

11     The Court only performs a choice of law analysis if there is an actual conflict

12  between the laws of the two relevant jurisdictions. If an actual conflict exists,

13  Washington courts apply the law of the jurisdiction with the "most significant

14  relationship" to the dispute, including considering any choice of law agreement between

15  the parties. "When parties dispute choice of law, there must be an actual conflict between

16  the laws or interests of Washington and the laws or interests of another state before

17  Washington courts will engage in a conflict of laws analysis." *Erwin v. Cotter Health*

18  *Ctrs.*, 161 Wn.2d 676, 692 (2007) (internal quotations omitted). A "real conflict" exists if

19  the result for a particular issue is different under the two states' laws. *Id.*

20     There does not appear to be a real conflict between California and Washington law

21  for Signal Hound's intentional or negligent misrepresentation claims, and thus the Court

22  believes it is appropriate to apply Washington law to those claims. Nevertheless, the

parties have not had a chance to brief the applicability of Washington law to those claims

or the viability of those claims under Washington law. Therefore, the Court RESERVES

RULING on Expandable's motion to dismiss Signal Hound's misrepresentation claims

and will rule on those claims after the parties have had an opportunity to brief the issues.

**C.      Breach of Implied Covenant of Good Faith and Fair Dealing**

Signal Hound alleges that Expandable breached the implied covenant of good faith

and fair dealing by refusing to customize its software to accommodate Signal Hound's

pricing model at a reasonable price and in a reasonable time frame. Dkt. 14, ¶ 41.

Expandable argues that Signal Hound is asking the Court to add a new requirement to the

contracts because under the express terms of the contracts, Expandable was not required

to customize its software to comport with Signal Hound's complicated pricing model.

Dkt. 17 at 15–16. Signal Hound argues that there are potentially other terms of the

contract not explicitly mentioned and that, if Expandable could accomplish the necessary

customization in a reasonable time frame and for a reasonable cost, it was required to

offer that solution to Signal Hound. Dkt. 20 at 19.

The covenant of good faith and fair dealing "not only imposes upon each

contracting party the duty to refrain from doing anything which would render

performance of the contract impossible by any act of his own, but also the duty to do

everything that the contract presupposes that he will do to accomplish its purpose."

*Pasadena Live v. City of Pasadena*, 114 Cal. App. 4th 1089, 1093 (2004) (internal

quotation omitted). The covenant "is limited to assuring compliance with the *express*

*terms* of the contract, and cannot be extended to create obligations not contemplated by

1   the contract." *Id.* at 1094 (internal quotation omitted) (emphasis in original). Breach of

2   the contract "is not a necessary prerequisite" to a claim for breach of the implied

3   covenant of good faith and fair dealing. *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal.,*

4   *Inc.*, 2 Cal. 4th 342, 373 (1992).

5           Signal Hound has not stated a plausible good faith and fair dealing claim. While

6   Expandable may have made representations that it could accommodate certain pricing

7   models prior to executing the contract, the parties signed a contract without such

8   representations or requirements. Expandable did not have a contractual duty to alter its

9   software at a discounted cost or in a short time frame, and Signal Hound has not pled any

10  facts suggesting that Expandable could have made the changes faster or cheaper than

11  what was offered. While misrepresentations made by Expandable about the flexibility of

12  its software and the software's ability to support any pricing model "out of the box"

13  could be sufficient to state claims of misrepresentation (though the Court is not ruling on

14  that at this time), the contracts themselves do not require Expandable to alter its software

15  to fit any pricing model. The Court will not read such a term into the contract. Thus,

16  Signal Hound's allegations are insufficient to state a claim for breach of the implied

17  covenant of good faith and fair dealing.

18          Therefore, Expandable's motion to dismiss is GRANTED as to Signal Hound's

19  claim for breach of the implied covenant of good faith and fair dealing, and that claim is

20  DISMISSED.

21

22

**D.    Breach of Implied Warranty of Fitness for Particular Purpose**

Signal Hound alleges that Expandable breached the implied warranty of fitness for a particular purpose because "Expandable had reason to know the particular use to which Signal Hound wished to put Expandable's software" and it failed to provide suitable software. Dkt. 14, ¶¶ 43–50. Expandable argues that Signal Hound waived implied warranties in the SLA, including fitness for a particular purpose, and that the waiver was conspicuous. Dkt. 17 at 16. Signal Hound argues that the waiver was not conspicuous because the heading did not indicate waiver of warranties, no language in the provision is in larger or contrasting type, and the waiver is not set off from surrounding text of the same size to call attention to it. Dkt. 20 at 14. Expandable argues that the waiver is conspicuous because the provision is titled "**WARRANTY**" in bold and capital letters, and it is not buried in a long and complicated contract. Dkt. 21 at 10.

"[T]o exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." Cal. Com. Code § 2316(2). A term is conspicuous if it is "so written, displayed, or presented that a reasonable person against whom it is to operate ought to have noticed it." Cal. Com. Code § 1201(b)(10). Whether a term is conspicuous is a decision for the court. *Id.* "A heading in capitals equal to or greater in size than the surrounding text" is conspicuous. *Id.* at (b)(10)(A).

The warranty disclaimer is conspicuous. The disclaimer is on the first page of a two-page contract, and it includes the heading, "**WARRANTY**" in bold and capital letters Dkt. 14-2 at 4. The provision only contains three sentences after the title, the last of which states: "This warranty is in lieu of all other warranties expressed or implied,

1    including, but not limited to, the implied warranties of merchantability and fitness for a

2    particular purpose." *Id.* The fact that the title says "warranty" and not "disclaimer of

3    warranty" or something similar does not change the analysis. The disclaimer is by no

4    means hidden or difficult to find, and it clearly disclaims the implied warranty of fitness

5    for a particular purpose.

6         Therefore, Expandable's motion to dismiss is GRANTED as to Signal Hound's

7    claim for breach of the implied warranty of fitness for a particular purpose, and that claim

8    is DISMISSED.

9    **E.    Failure of Consideration**

10        Signal Hound argues that it is "entitled to rescission of the Software Maintenance

11   Agreement" and is "entitled to a refund of unused hours of professional service, at a rate

12   of $175 per hour" because Signal Hound was never able to implement and use

13   Expandable's software. Dkt. 14, ¶¶ 56–57.[1] Expandable argues that Signal Hound itself

14   chose not to use the software and that Expandable never contracted to refund the contract

15   price if Signal Hound chose not to use the services in the agreement. Dkt. 17 at 17. Signal

16   Hound responds that because it received nothing of value under the contract, the contract

17   should be rescinded, and it should receive restitution. Dkt. 20 at 17.

18        Under California law, "[a] party to a contract may rescind the contract . . . if the

19   consideration for the obligation of the rescinding party, before it is rendered to him, fails

20   in a material respect from any cause." Cal. Civ. Code § 1689(b)(4). "[A] failure of

21   _____

22        [1] Paragraph 57 in Signal Hound's Amended Complaint, Dkt. 14, is mislabeled as
     paragraph 55.

1    consideration must be material, or go to the essence of the contract before rescission is

2    appropriate." *Wyler v. Feuer*, 85 Cal. App. 3d 392, 403–04 (1978) (internal quotations

3    omitted).

4    While it is true that the SMA does not expressly state that Expandable would

5    refund the purchase price of the contract if Signal Hound decided not to use its software,

6    the "essence" of the contract is based on the idea that Signal Hound would have usable

7    software for Expandable to maintain. If Expandable had provided Signal Hound software

8    that did not work at all, for any purpose, certainly rescission of the SMA would be

9    proper. Indeed, Expandable can still argue that there has not been a failure of

10   consideration, but Signal Hound has pled sufficient facts to state a plausible claim and

11   survive a motion to dismiss.

12   Therefore, Expandable's motion to dismiss is DENIED as to Signal Hound's

13   failure of consideration claim.

14   **F.    Leave to Amend**

15   On a Rule 12(b)(6) motion, "a district court should grant leave to amend even if no

16   request to amend the pleading was made, unless it determines that the pleading could not

17   possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal.*

18   *Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (internal citations omitted). In

19   the event the court finds that dismissal is warranted, the court should grant the plaintiff

20   leave to amend unless amendment would be futile. *Eminence Capital, LLC v. Aspeon,*

21   *Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "[A] proposed amendment is futile only if no

22   set of facts can be proved under the amendment to the pleadings that would constitute a

1    valid and sufficient claim or defense." *Miller v. Rukoff-Sexton, Inc.*, 845 F.2d 209, 214

2    (9th Cir. 1988), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

3    (internal citations omitted).

4         There are no set of facts that can be proved that would constitute a valid claim for

5    breach of the implied warranty for fitness for a particular purpose because Signal Hound

6    clearly waived its right to assert such a claim in the contract. Thus, amendment of that

7    claim would be futile, the Court will not grant leave to amend it, and the claim is

8    dismissed with prejudice. The same is not true for Signal Hound's breach of the covenant

9    of good faith and fair dealing claim. Thus, the Court will grant Signal Hound leave to

10   amend that claim. Any amendment should come after the Court has ruled on the

11   misrepresentation claims for the sake of efficiency.

12                           **III.  ORDER**

13        Therefore, it is hereby **ORDERED** that Defendant Expendable Software, Inc.'s

14   Motion to Dismiss, Dkt. 17, is **GRANTED** as to Signal Hound's implied covenant of

15   good faith and fair dealing and implied warranty of fitness for a particular purpose claims

16   and **DENIED** as to Signal Hound's failure of consideration claim. The Court

17   **RESERVES RULING** on Signal Hound's claims for intentional and negligent

18   misrepresentation.

19        Expandable shall file supplemental briefing addressing the choice of law issue and

20   the application of Washington law to the misrepresentation claims no later than April 8,

21   2022. Signal Hound may respond no later than April 15, 2022. Neither brief shall exceed

22   ten (10) pages in length. Following the Court's order on the misrepresentation claims,

1   Signal Hound shall be permitted to amend its good faith and fair dealing claim. The Clerk

2   shall renote Expendable's Motion to Dismiss, Dkt. 17, for consideration on the Court's

3   April 15, 2022 calendar.

4         Dated this 25th day of March, 2022.

5

6

7   BENJAMIN H. SETTLE
    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 13